52 CCPA
**Application of Sidney LIPSCHUTZ, Edward H. Barnett and Salvatore Aquino.**
**Patent Appeal No. 7332.**

United States Court of Customs and Patent Appeals.
March 4, 1965.

938

A. D. Caesar, Philadelphia, Pa. (Alan H. Bernstein, Stanley H. Cohen, Philadelphia, Pa., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Jr., Judges.

ALMOND, Judge.

Sidney Lipschutz et al. appeal from the decision of the Board of Appeals affirming the examiner's rejection on prior art of claim 10 of appellants' application[1] entitled "Tap for Packaged Electrolyte." No claim has been allowed.

The object of the claimed invention is to obviate the problems encountered in the process of filling "dry charge" batteries with acid or electrolyte supplied in a package consisting of a rigid outer container such as a cardboard box and a flexible inner container such as a polyethylene bag. Storing and handling problems are reduced and the necessity of opening or inverting the electrolyte package is eliminated.

The drawings reproduced below portray the claimed invention:

Claim 10, applied to the drawing, is as follows:

"In combination, an outer box (36), an inner flexible bag (40) containing an electrolyte and a tap (10) for dispensing said electrolyte directly therefrom, said box having relatively rigid cardboard walls (34) of suitable thickness, said flexible bag being positioned within said box, said tap penetrating through one of said walls of said box and said flexible bag adjacent the bottom edge thereof, said tap being of a noncorrosive rigid material and comprising an elongated body member

---

1. Serial No. 845,851 filed October 12, 1959.

(12) having an internal bore (32), a shoulder member (18) positioned on the exterior surface of said body member, at least one aperture (30) in said body member communicating with said bore (32), and thread means (22) formed on the exterior surface of said body member and being interposed between said shoulder and said aperture, said aperture being spaced a substantial distance from said thread means, said thread means being positioned adjacent said shoulder to create a narrow recess (24) which lockingly receives a portion of said one of said walls when said tap has penetrated through said one wall and into said flexible bag so that said one wall of said box is interposed between said thread means and said shoulder, said thread means are interposed between said one wall of said box and the exterior surface of said flexible bag, and said aperture is positioned within said flexible bag."

The pertinent references relied upon are:

| | | |
|---|---|---|
| McFarland | 344,538 | June 29, 1886 |
| Manning | 2,751,119 | June 19, 1956 |
| Brookshier | 2,925,199 | February 16, 1960 |
| Bretschneider (German) | 394,520 | April 24, 1924 |

McFarland, relating to a lamp-filling attachment for oil cans, discloses a tap comprising a tube having threads spaced from the shoulder, a gasket and a container piercing point. The tap is attached to the bottom of the can, and a similar tap is attached at the top to serve as a vent.

Manning shows a tap formed of metal, plastic or any other suitable material. The tap is designated as a milk bottle tap. The examiner relied on Manning "solely for the teaching of constructing a tap from a non-corrosive plastic material."

Brookshier discloses a plastic film container, such as a polyethylene bag, housed in an outer container formed from corrugated board. The tapping device shows a piercing tap and a lock nut. The outer container shows a tear-open flap which when opened exposes the plastic bag. When the tap penetrates the bag, a portion of the bag is thrust inwardly and the pressure of the fluid on the torn plastic flaps holds them in sealed relationship with the piercing tap. Upon withdrawal of the tap from the plastic container, the flaps are reversed in their contact relationship with the tap. Thereafter, the locking nut is threaded forwardly against the flaps at the interface between the threaded elements of the locking nut and the piercing tap.

Bretschneider relates to a device for pouring liquid from closed metal cans as illustrated below.

Abb. 1.

Abb. 3.

The device may be applied to puncture the body, cover or bottom of the can to be emptied. After insertion, the device may be turned like a screw so that the

edge of the hole engages the projection thread. When turning is completed, the edge of the hole rests firmly between the projection and the packing ring.

The examiner held the claim in issue unpatentable over McFarland, Bretschneider, Brookshier and Manning.

The board pointed out that Brookshier shows an outer container made of relatively rigid material with a flexible bag therein for containing a liquid; that instead of piercing the inner and outer containers, Brookshier provided a tear flap to expose a portion of the flexible bag and the tap is thrust through the exposed wall of the bag, and that Bretschneider, however, shows a tap similar to appellants' tap for piercing the wall of a metal container to draw liquid therefrom. The board concluded that it would be obvious to a person skilled in the art to use a tap of the type shown in Bretschneider to pierce both walls in Brookshier.

The claim calls for thread means adjacent the shoulder "to create a narrow recess which lockingly receives a portion of said one of said walls when said tap has penetrated through said one wall and into said flexible bag so that one wall of said box is interposed between said thread means and said shoulder." The board pointed out that if the tap in Bretschneider were inserted through both walls of the Brookshier container, the threaded portion of the Bretschneider tap terminating a short distance from the shoulder would create a "narrow recess" which would lockingly receive a portion of one of the walls.

With reference to the limitation in the claim that the thread means be interposed between the wall of the box and the exterior surface of the flexible bag, the board held that this limitation would be met if the tap of Bretschneider were substituted for the tap of Brookshier and inserted through both of the walls of Brookshier.

The claim calls for the aperture to be positioned within the flexible bag. If the tap of Bretschneider were employed as suggested by the board, one of the apertures would not be positioned in the bag. The board concluded that it would be obvious to a person skilled in the art to so locate the apertures in Bretschneider so that both would be within the bag as shown in Brookshier. We agree, and further note that it would also be obvious to eliminate one of the apertures to make the tap operable.

The board noted appellants' argument that if the Bretschneider tap were used in the Brookshier container, there would be a gasket between the shoulder and the wall of the container. However, the board observed that the claim contained no limitation preclusive of such a gasket and, if included, the limitation of the claim that one wall of the box be interposed between the thread means and the shoulder would be met.

Appellants contend that because the bag is made of polyethylene, or some similar material which possesses a "memory," the bag forms a tight seal around the tap thereby preventing any leakage from the bag into the outer container. With such arrangement, appellants state that they have eliminated the use of a gasket while retaining its function. The specification attributes "memory" to the bag because it "is made of polyethylene." The board noted that the bag in Brookshier is made of the same material and that the claim does not define the characteristics of the bag or other factors which provide the "plastic memory."

Our analysis of the board's opinion, in the light of the claimed invention and the references herein discussed and applied by the board, impels the conclusion that the board has correctly decided the issue of obviousness here presented.

We have considered the Lipschutz affidavit which indicates approximate yearly total sales of the tap of as high as $41,763.75. This evidence of patentability has been taken into account but is not persuasive here because the evidence

as a whole clearly indicates that the invention is obvious within the meaning of 35 U.S.C. § 103.

The decision of the board is affirmed. Affirmed.